IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.

| | |
|---|---|
| TANNIE BURKE, | ) |
| Plaintiff, | ) |
| v. | ) |
| MIAMI-DADE COUNTY, a political subdivision of the State of Florida and CLIFTON BALDWIN and JULIO MARTOS, residents of the State of Florida | ) ) ) ) |
| Defendants. | ) ) |

**COMPLAINT**

Plaintiff sues Defendants and says:

**JURISDICTION AND VENUE**

1. This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 12132, as well as common law state actions. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as well as pendent jurisdiction of the state law claims pursuant to 28 U.S.C. § 1367(a), which arise out of the same operative nucleus of facts, which are so related to the claims against the Defendants for which this Court has original jurisdiction in that they form a part of the same case or controversy under Article III of the United States Constitution.

2. Venue of this action is the Miami Division of the United States District Court for the Southern District of Florida where the wrongful acts occurred.

## THE PARTIES

3. Plaintiff, TANNIE BURKE ("Tannie"), is a citizen and resident of Miami-Dade County, Florida, who has lived here since his birth. He is and has been for all periods relevant to this action, legally blind.

4. Defendant, Miami-Dade County ("the County"), is a public entity incorporated under the laws of the State of Florida, and is responsible for establishing, organizing, operating and policing all public and private property within Miami-Dade County.

5. Defendant, CLIFTON BALDWIN ("Baldwin"), is employed by and acts as a police officer for the Miami Dade Police Department and for the County.

6. Defendant, JULIO MARTOS ("Martos"), is employed by and acts as a police officer for the Miami Dade Police Department and for the County.

## THE FACTS

7. On August 27, 2014, Baldwin and Martos, while engaged in their duties as police officers, pulled onto a dead-end street in South Dade and arrested three young black men after finding a single marijuana cigarette on the ground on the second-floor landing at 26216 SW 14th Place.

8. Two of the men were released on the spot after being given notices to appear in court.

9. Tannie, the third person, was placed in handcuffs and forced to walk down the stairs without police assistance.

10. He did so although blind, by leaning on the stairs' railing and working his way down the steps.

11. Tannie suffers from Coats' Disease, is legally blind in the left eye, and only able to see shapes and greater detail if inches from what he is trying to see. He can only see light and make out shapes with his right eye and the eyebrow and forehead area above the right eye is swollen and protrudes over his right eye.  Further, the disease has affected him physically to the point where one of his eyes is basically shut.

12. There is no way of looking at Tannie's face and his affect without being alerted to the fact that he has a physical disability.

13. Tannie was arrested just after he had stepped out of his second floor apartment onto the front landing opposite an adjoining apartment where a barbecue was under way.

14. He did not have any marijuana in his possession, nor was he smoking marijuana.

15. At the time of the arrest, it was past nightfall, and his sole activity was walking out of his apartment door.

16. Tannie's stepfather, Marvin Armstrong, has in the past criticized police for alleged racial profiling of African American and Black males in this neighborhood and has frequently videotaped their police activities, which has enraged them.

17. The police knew that Tannie was related to Mr. Armstrong.

18. In fact, at the time of the complained-of incident, Mr. Armstrong was video-taping this entire encounter as well.

19. Instead of taking Tannie to jail or to the South District police station, the officers placed him in the front passenger seat of an unmarked vehicle.

20. While attempting to sit in the vehicle, Tannie's body collided with the top frame of the vehicle.

21. Mr. Armstrong, irate that his blind stepson was being falsely arrested and unassisted with his handicap, informed the police officers as they were loading him into the car: "He blind dumbass. Y'all don't tell him y'all walk him to the car, how the fuck he gonna know? Stupid."

22. Baldwin and Martos entered the police car with Tannie and drove away.

23. Baldwin and Martos claimed that as they left, they received a radio transmission over an official frequency that a suspect was fleeing in the area and decided to assist with the search, so they began patrolling the perimeter of the area.

24. It is unclear why the Defendants would take someone into custody and at the same time assist other officers on another call while there were other officers at Tannie's location that could have assisted in the search.

25. Tannie, while in the vehicle, did not hear the alleged audio transmission, and in fact, the record kept of all such radio-transmissions was allegedly destroyed before the MDPD Professional Compliance Bureau investigators began their investigation.

26. As with most individuals with a handicap, as Tannie could not see, his hearing was well-developed, and he always listened carefully to what was going-on around him.

27. During the supposed assistance by the Defendants, the officers took Tannie for a ride, during which they repeatedly complained about his stepfather's actions, as opposed to making any comments about a supposed "fleeing suspect" or any other search.

28. Tannie recalls the officers saying: "Your stepfather got a lot of mouth. You know we don't like that."

29. After riding him around for a period of time, during which he was handcuffed, the officers decided to release Tannie with a PTA ("promise to appear").

30. They directed him to get out of the car and to walk to the rear of the car.

31. Tannie was only able to do so by moving his hands across the car to guide him.

32. The officers presented Tannie with a document to sign.

33. Tannie told them that he could not see the document so they placed a large light on it. He repeatedly told them that he was not able to see and described his sight limitations to them.

34. At that point, when it became clear that the officers intended to leave Tannie out in the dark, rural, light-less area, Tannie asked the officers to drive him back to his neighborhood.

35. Tannie also informed the officers that he could not be dropped off at a bus stop or busy street because of his condition.

36. The officers refused.

37. Instead, they drove onto a dark, secluded, rural street without any lighting and dropped Tannie off on the edge of some darkened farmland tract miles from his house.

38. It was pitch black dark.

39. In fact, a subsequent investigation revealed that the officers dropped Tannie off near SW 137th Avenue and SW 260th street, several miles away from the supposed BOLO search area.

40. For the better part of an hour Tannie threaded his way along the side of the road, following the edge of asphalt or the white stripe to maintain direction, as he sought to find his way home, a blind man, unfamiliar with his location. As he walked, he was in constant danger of being hit by vehicles or attacked by criminals. Eventually, he came upon a good Samaritan who assisted him in returning to his home.

41. At one point while he was out in the dark, another police car pulled up to him, and despite the fact that he again asked for assistance and told them he was blind, the officers in that car left him to his own devices.

42. Without question, the officers were indulging in the famous Baretta exercise of "You can beat the rap but not the ride,"[1] except that the conduct being punished by these officers was nothing that Tannie had done, but rather were indulging their pique and annoyance at Tannie's stepfather who had the audacity to question their activities. To do so, they harassed, humiliated, and endangered the life and safety of a handcuffed blind young man who could not defend himself as opposed to his stepfather.

43. The officers' actions are symptomatic of the conduct of MDPD police officers in the area where Tannie lives. In fact, CBS Channel 4 in Miami, under the direction of the well-known and nationally-acclaimed investigative reporter, Jim DeFede, conducted an investigation of the so-called plain-clothes-garbed "Crime Suppression Unit" and found that the MDPD consistently discriminates and harasses African Americans in Tannie's neighborhood.

44. CBS 4's coverage ran for approximately four evenings, but has not resulted in the MDPD taking any corrective action as they apparently are of the view that they are free to treat anyone of color, handicapped or not as they wish.

45. As summarized by Mr. Armstrong: "These law enforcement ain't got no compassion, no consideration, and definitely none toward a blind man." "They just do what they do because they think they can get away with it." Moreover, they do get away with it.

46. Tannie deserves to be compensated for his inexplicable and savage treatment by Baldwin and Martos. He has been traumatized, stigmatized, and left in fear as to when the

---

[1] This was a favorite refrain of the lead star in the *Baretta* T.V. series, which ran from 1975 to 1978.

"Crime Suppression Unit" will next come knocking.  He has suffered mental and psychological damage, damage to his reputation, and is in fear for his life by being placed in a circumstance where his safety and his life were in peril.

47. Tannie has retained the undersigned firm of attorneys and is obligated to pay them a reasonable fee for their services.

### COUNT I: FOURTH AMENDMENT FALSE ARREST/FALSE IMPRISONMENT – BALDWIN AND MARTOS

48. Tannie re-alleges the allegations contained in paragraphs 1-47 of this Complaint.

49. This action is brought by pursuant to title 42, section 1983, United States Code, for the deprivation of Tannie's Civil Rights caused by Baldwin and Martos.

50. Baldwin and Martos violated Tannie's clearly-established Fourth Amendment right to be free from false arrest and imprisonment when they arrested him without probable cause.

51. Tannie never possessed any cannabis.

52. Nevertheless, the officers falsely arrested Tannie for possession of cannabis.

53. The officers did not have probable cause to arrest him.

54. WHEREFORE, Plaintiff, Tannie Burke, demands judgment for his economic and noneconomic damages, attorney's fees, the costs of prosecuting this action, and any other relief this Court deems proper and just.

### COUNT II:  FOURTEENTH AMENDMENT DUE PROCESS/FAILURE TO RENDER AID  - BALDWIN AND MARTOS

55. Tannie re-alleges the allegations contained in paragraphs 1-47 of this Complaint.

56. This action is brought pursuant to title 42, section 1983, United States Code, for the deprivation of his Civil Rights caused by Baldwin and Martos.

57.     Baldwin and Martos' failure to render aid violated Tannie's clearly established Fourteenth Amendment right to due process when they left Tannie, a noticeably blind man, out in the middle of nowhere.

58.     By doing so, the officers showed a deliberate indifference to his well-being, and as a result, Tannie was left to inch his way home in the dark after Baldwin and Martos intentionally left him out in the dark far from his home.

59.     The officers' actions (or lack thereof) caused Tannie to sustain extensive damages, humiliation, and embarrassment.  He has lost the capacity to enjoy life, and he has sustained other compensable injuries and other significant damage and injury, including psychological injury.

60.     Accordingly, the defendants are liable for Tannie's damages.

61.      WHEREFORE, Plaintiff, Tannie Burke, demands judgment for his economic and noneconomic damages, attorney's fees, the costs of prosecuting this action, and any other relief this Court deems proper and just against Baldwin and Martos.

**COUNT IV: STATE LAW FALSE ARREST/IMPRISONMENT – THE COUNTY**

62.     Tannie re-alleges the allegations contained in paragraphs 1-47 of this Complaint.

63.     This action is brought by Tannie Burke against the County for state law false arrest and false imprisonment, pursuant to the County's waiver of sovereign immunity under Florida Statutes section 768.28.

64.     This Court has pendent jurisdiction over the claim because this claim and the federal claim arise out of the same common nucleus of operative fact and thus are transactionally related.

65. On August 24, 2014, Baldwin and Martos, both acting in their official capacity as employees of Miami-Dade County, intentionally restrained Tannie against his will under circumstances that were unreasonable and unwarranted, and without legal authority (probable cause to arrest), which caused Tannie harm.

66. Specifically, the officers arrested Tannie for possession of cannabis, although there was no probable cause to arrest Tannie for that offense, or any other offense.

67. The State later dropped the charge and dismissed the action.

68. Nevertheless, as a result of the false arrest/imprisonment, Tannie suffered extensive damages, humiliation, and embarrassment.

69. Pursuant to the County's waiver of sovereign immunity under Florida Statutes section 768.28, it is liable to Tannie for his injuries caused by Baldwin and Martos.

WHEREFORE, Plaintiff, Tannie Burke, demands judgment for his economic and noneconomic damages against the County, attorney's fees, the costs of prosecuting this action, and any other relief this Court deems proper and just.

## COUNT V
## AMERICANS WITH DISABILITIES ACT – THE COUNTY

70. Tannie re-alleges the allegations contained in paragraphs 1-47 of this Complaint.

71. This action is brought by pursuant to title 42, section 12132, United States Code, for the deprivation of Tannie's Civil Rights and rights as a disabled person.

72. Tannie is a qualified individual with a disability because he was legally blind at the time of the incident.

73. The County is a public entity.

74. Tannie was denied the services and benefits of a competent police force because the County failed to train its officers to effectively respond to situations involving blind disabled persons.

75. Tannie was denied the services and benefits of a competent police force because the County has failed to adopt policies and practices that properly account for disabled blind persons.

76. Tannie was denied the services and benefits of a competent police force because he was and is a blind disabled person.

77. Because of the complained-of denial of services, Tannie suffered severe and extensive damages, humiliation, and embarrassment.

WHEREFORE, Plaintiff, Tannie Burke, demands judgment for his economic and noneconomic damages against the County, attorney's fees, the costs of prosecuting this action, and any other relief this Court deems proper and just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial of all issues so triable as of right by a jury.

**DATED:** December 14, 2016.

Joseph P. Klock, Jr., Esq., FBN 156678
jklock@rascoklock.com
JuanCarlos Antorcha, Esq. FBN 523305
jantorcha@rascoklock.com
Hilton Napoleon Esq., FBN 17593
hnapoleon@rascoklock.com
RASCO KLOCK  PEREZ NIETO
2555 Ponce de Leon Blvd., Suite 600
Coral Gables, Florida 33134
Telephone: 305.476.7100
Facsimile: 305.675.7707

By: /s/ Joseph P. Klock, Jr.
Joseph P. Klock Jr.

4852-4878-6749, v. 2